IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

THOMAS MICHAEL LARRY,        )
                             )
         Petitioner,         )
                             )
    v.                       )      1:05CV628
                             )
EDWARD THOMAS[1], Warden,    )
Central Prison, Raleigh,     )
North Carolina,              )
                             )
         Respondent.         )

**MEMORANDUM OPINION AND ORDER**

**OSTEEN, JR., District Judge**

Pursuant to Federal Rule of Civil Procedure 60(b)(6), Petitioner Thomas Michael Larry, a prisoner of the State of North Carolina, seeks relief from the judgment of this court, (Doc. 51), which denied his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, (Doc. 7), on October 11, 2006. (See Doc. 75). Because Petitioner has failed to show that he is entitled to relief, the court denies the instant motion.

**I.    BACKGROUND**

According to the facts as presented in Petitioner's direct appeal, Petitioner robbed a Food Lion grocery store on

---

[1] Edward Thomas succeeded Mr. Carlton Joyner as Warden at Central Prison. The case caption is hereby amended to accurately reflect Mr. Thomas as the Respondent.

January 15, 1994. State v. Larry, 345 N.C. 497, 507-08, 481 S.E.2d 907, 913 (1997). Pointing a small gun at an employee, Petitioner demanded that she open the store's safe. Petitioner took $1,700.00 from the safe, pointing the gun at other people in the store and telling them not to move. Robert Buitrago, an off-duty police officer, was waiting in line at the check-out during the robbery, and Petitioner threatened him with the gun before fleeing the store. Buitrago chased Petitioner, and the two struggled outside the store. Witnesses heard one or more gunshots; Buitrago was fatally shot in the chest. Petitioner ran from the store, but police found him hiding in a residence in Winston Salem. Id.

A jury convicted Petitioner on April 25, 1995, of first-degree murder and robbery with a dangerous weapon. For the first-degree murder conviction, based on premeditation and deliberation and the felony murder rule, the jury recommended that Petitioner be sentenced to death. The North Carolina Supreme Court affirmed Petitioner's conviction and sentence on March 7, 1997. Id. at 497, 481 S.E.2d at 907. The United States Supreme Court denied certiorari review on October 14, 1997. Larry v. North Carolina, 522 U.S. 917 (1997). Petitioner filed a motion for appropriate relief ("MAR") and an amended MAR in the Superior Court of Forsyth County, seeking post-conviction

relief. While the MAR was pending, he filed another motion pursuant to N.C. Gen. Stat. § 15A-2005, alleging that his mental retardation prohibited the State from carrying out his execution. The superior court denied the amended MAR on April 24, 2001, and the North Carolina Supreme Court denied review on June 27, 2002. State v. Larry, 355 N.C. 755, 566 S.E.2d 84 (2002). The superior court conducted an evidentiary hearing regarding Petitioner's second MAR and its mental retardation claim on July 3, 2003. After hearing evidence from experts on both sides, as well as witnesses who knew the petitioner, the court denied the motion. The North Carolina Supreme Court denied certiorari review on March 3, 2005. State v. Larry, 359 N.C. 324, 611 S.E.2d 841 (2005).

Petitioner filed a petition for a writ of habeas corpus in this court on July 18, 2005. (Doc. 7.) On the same date, Petitioner filed an additional MAR in the superior court to reassert his mental retardation claim, as well as a motion in this court to hold his federal petition in abeyance until pending state court litigation was complete. This court denied the motion for abeyance on July 25, 2005. (Doc. 6.) On September 12, 2005, Respondent answered, (Doc. 15), and simultaneously filed a motion to dismiss certain claims that were not exhausted, (Doc. 16). Petitioner responded with a

motion to expand the record, (Doc. 22), and another motion for abeyance, or, in the alternative, dismissal of all unexhausted claims, to avoid having the entire petition dismissed as a mixed petition. (Doc. 19.) This court denied the motion for abeyance and dismissed all unexhausted claims. (Doc. 38.) On June 13, 2006, the Magistrate Judge issued a recommendation, (Doc. 39), that the district court dismiss the petition. On October 11, 2006, this court adopted the Magistrate Judge's recommendation and ordered the petition dismissed. (Docs. 50, 51.) The court denied a motion pursuant to Rules 59 and 60 to alter or amend judgment on April 9, 2007. (Doc. 54.) The United States Court of Appeals for the Fourth Circuit affirmed the dismissal of the petition on January 5, 2009. (Docs. 69, 70.) Mandate was issued on March 19, 2009. (Doc. 74.) Larry v. Branker, 552 F.3d 356 (4th Cir.), cert. denied, 558 U.S. 953 (2009).

The October 11, 2006 ruling addressed, among other claims, the following non-dismissed grounds for relief: (II) the execution of the mentally retarded Petitioner would violate the Eighth Amendment to the United States Constitution, and (VI) trial counsel were ineffective by insulting the jury during closing argument in the penalty phase.[2]

---

[2] These claims are numbered as they were in the original petition; Grounds III, IV, V, VII, IX, X, XV, and XVI were dismissed as unexhausted.

**II. STANDARD OF LAW**

    **A.   Overview**

Petitioner asks the court to grant him relief from its original denial of his petition on two grounds. First, he claims that Hall v. Florida, 572 U.S. 701 (2014), represents a "significant change" in the law regarding intellectual disability and the Supreme Court's decision in Atkins v. Virginia, 536 U.S. 304 (2002), which rules that the Eighth Amendment prohibits the execution of the intellectually disabled. (Doc. 75 at 12.) Second, he claims that this court should review his claims of ineffective assistance of counsel ("IAC") because of the Court's ruling in Martinez v. Ryan, 566 U.S. 1 (2012). (Doc. 75 at 14.) Respondent argues that Petitioner's motion should be considered a second or successive petition and dismissed for his failure to obtain permission from the Fourth Circuit to file such a petition.

    **B.   Rule 60(b)**

A party may move for relief via a motion filed under Rule 60(b) within a reasonable time after a judgment has been entered. Fed. R. Civ. P. 60(b). The district court has the discretion to grant such a motion for "any other reason justifying relief from the operation of the judgment." Eberhardt v. Integrated Design & Constr., Inc., 167 F.3d 861,

872 (4th Cir. 1999). For Rule 60(b) to apply, however, "the movant must make a showing of timeliness, a meritorious defense, a lack of unfair prejudice to the opposing party, and exceptional circumstances." Werner v. Carbo, 731 F.2d 204, 206-07 (4th Cir. 1984) (citations/footnote omitted). In the habeas context, when a prisoner claims that there has been a change in law that amounts to "extraordinary circumstances," the court must consider whether the change in law overruled settled precedent and whether the prisoner has been "diligen[t] in pursuing review." Gonzalez v. Crosby, 545 U.S. 524, 536-37 (2005).

Federal habeas corpus petitioners may not use a Rule 60(b) motion to assert a claim attacking the merits of their state convictions. Id. at 538. A proper Rule 60(b) motion is one that attacks "some defect in the integrity of the federal habeas proceedings." Id. at 532 (footnote omitted); see United States v. Winestock, 340 F.3d 200, 207 (4th Cir. 2003) (explaining, "a motion directly attacking the prisoner's conviction or sentence will usually amount to a successive application, while a motion seeking a remedy for some defect in the collateral review process will generally be deemed a proper motion to reconsider"). The Supreme Court has defined a claim attacking the merits of a state conviction as "an asserted federal basis

for relief from a state court's judgment of conviction." Gonzalez, 545 U.S. at 530. Additionally, a Rule 60(b) motion will "bring a 'claim' if it attacks the federal court's previous resolution of a claim on the merits, since alleging that the court erred in denying habeas relief on the merits is effectively indistinguishable from alleging that the movant is, under the substantive provisions of the statutes, entitled to habeas relief." Id. at 532 (footnote omitted).

The Fourth Circuit has warned that "district courts must treat Rule 60(b) motions as successive collateral review applications when failing to do so would allow the applicant to evade the bar against relitigation of claims presented in a prior application or the bar against litigation of claims not presented in a prior application." Winestock, 340 F.3d at 206 (citations omitted). If the motion is "tantamount to [a] successive application[]," the district court "must either dismiss the motion for lack of jurisdiction or transfer it to this court so that we may perform our gatekeeping function under § 2244(b)(3)." Id. at 207.

Under the rules of the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal district court may not consider a second or successive habeas corpus petition unless the court of appeals has approved the petitioner's filing of

such a petition. Winestock, 340 F.3d at 205 ("In the absence of pre-filing authorization, the district court lacks jurisdiction to consider an application containing abusive or repetitive claims."); see 28 U.S.C. § 2244(b)(3)(A) (stating that "[b]efore a second or successive application permitted by this section is filed in the district court, the applicant shall move in the appropriate court of appeals for an order authorizing the district court to consider the application"). Even if the court of appeals has granted permission for a prisoner to file a second or successive petition, AEDPA demands that "[a] claim presented in a second or successive habeas corpus application under section 2254 that was presented in a prior application shall be dismissed." 28 U.S.C. § 2244(b)(1).

**C. Hall v. Florida**

The Supreme Court has ruled that the Eighth Amendment prohibits the execution of prisoners who are intellectually disabled. Atkins, 536 U.S. at 321. Although Atkins left it to the individual states to define intellectual disability, the Court noted that "clinical definitions of mental retardation[3] require not only subaverage intellectual functioning, but also

---

[3] At the time of the Court's ruling in Atkins, "mental retardation" was the preferred terminology used when referring to intellectual disability. The medical community has since updated its nomenclature.

significant limitations in adaptive skills such as communication, self-care, and self-direction that became manifest before age 18." Id. at 318. In passing statutes to define intellectual disability, many states, including Florida, used the above clinical definition, allowing proof of subaverage intellectual functioning through the use of IQ tests.

In Hall, the Court invalidated Florida's practice of not allowing defendants to submit evidence of limitations in adaptive functioning if they could not show an IQ score of 70 or below. Hall, 572 U.S. at 704. On its face, Florida's definition of intellectual disability is valid under Atkins: a defendant must show "significantly subaverage general intellectual functioning existing concurrently with deficits in adaptive behaviors and manifested during the period from conception to age 18." Fla. Stat. § 921.137(1) (2013). In practice, however, the Florida Supreme Court's interpretation of that law violates the Eighth Amendment in two ways. First, the court "disregards established medical practice" by insisting on a strict cut-off score of 70 on IQ tests, without including the standard error of measurement ("SEM"), which "reflects the reality that an individual's intellectual functioning cannot be reduced to a single numerical score." Hall, 572 U.S. at 712-13. Second, the court "has held that a person whose test score is above 70,

including a score within the margin for measurement error, does not have an intellectual disability and is barred from presenting other evidence that would show his faculties are limited." Id. at 711-12.

By adhering to that rigid cutoff, Florida's treatment of those defendants who claim intellectual disability as a defense to execution is not consistent with what the Eighth Amendment requires. If a defendant does not have a raw score of 70 or below, SEM notwithstanding, Florida's "sentencing courts cannot consider even substantial and weighty evidence of intellectual disability as measured and made manifest by the defendant's failure or inability to adapt to his social and cultural environment, including medical histories, behavioral records, school tests and reports, and testimony regarding past behavior and family circumstances." Id. at 712. Florida adhered to this rule "even though the medical community accepts that all of this evidence can be probative of intellectual disability, including for individuals who have an IQ score above 70." Id. In Hall, the Supreme Court held that Florida thus created "an unacceptable risk that persons with intellectual disability will be executed." Id. at 704.

**D. Martinez v. Ryan**

Prisoners do not have a constitutional right to assistance of post-conviction counsel and therefore have no right to the effective assistance of post-conviction counsel. Coleman v. Thompson, 501 U.S. 722, 752 (1991); Pennsylvania v. Finley, 481 U.S. 551, 555-56 (1987). Generally, then, a petitioner may not use the ineffectiveness of post-conviction counsel as cause to excuse a procedural default. See Coleman, 501 U.S. at 752 (holding that because "[t]here is no constitutional right to an attorney in state post-conviction proceedings," a federal habeas "petitioner cannot claim constitutional ineffective assistance of counsel in such proceedings"). Martinez announced a narrow exception to the Coleman rule, holding that "a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective." Martinez, 566 U.S. at 17. Martinez will only allow a petitioner to excuse a procedural default if: (1) the trial-counsel IAC claim is "substantial"; (2) the "cause" consists of no counsel or ineffective post-conviction counsel; (3) the state post-conviction proceeding was the "initial" review proceeding for the IAC claim; and (4) state law requires that a trial-level IAC

claim be raised in initial post-conviction review. Id. at 14, 17. For a claim to be "substantial," the petitioner "must demonstrate that the claim has some merit." Id. at 14.

In 2013, the Court extended the Martinez exception to Texas, where, although a defendant may raise IAC on direct appeal, the court process effectively "denies a meaningful opportunity to do so." Trevino v. Thaler, 569 U.S. 413, 429 (2013). The Fourth Circuit has recognized that North Carolina does not fall neatly within Martinez or Trevino. Fowler v. Joyner, 753 F.3d 446, 461 (4th Cir. 2014), cert. denied, ____ U.S. ____, 135 S. Ct. 1530 (2015). Under North Carolina law, IAC claims that are apparent from the cold record must be brought by the prisoner on direct appeal. See N.C. Gen. Stat. § 15A-1419(a)(3), (b) (requiring denial of an MAR if "[u]pon a previous appeal the defendant was in a position to adequately raise the ground or issue underlying the . . . motion but did not do so"); State v. Fair, 354 N.C. 131, 166, 557 S.E.2d 500, 524 (N.C. 2001) ("IAC claims brought on direct review will be decided on the merits when the cold record reveals that no further investigation is required, i.e., claims that may be developed and argued without such ancillary procedures as the appointment of investigators or an evidentiary hearing."). As to those claims, "the state collateral review proceeding [is not]

- 12 -

the initial review proceeding in respect to the . . . claim," and the Martinez exception to Coleman will not apply. Fowler, 753 F.3d. at 463 (citation and quotation marks omitted).

Some IAC claims, however, "will fall within the Martinez exception." Fowler, 753 F.3d at 463. Those claims are those that are not apparent from the trial record, which "should be considered through motions for appropriate relief and not on direct appeal." Id. (quoting State v. Stroud, 147 N.C. App. 549, 553, 557 S.E.2d 544, 547 (2001)) (quotation marks omitted); see also State v. Long, 354 N.C. 534, 540, 557 S.E.2d 89, 93 (2001) ("Thus, while in some situations a defendant may be required to raise an IAC claim on direct appeal, a defendant will not be required to do so in all situations."). Thus, if a North Carolina prisoner presents a substantial claim of IAC that requires evidence beyond the record at trial and was procedurally defaulted because state post-conviction counsel failed to raise it in the first MAR proceeding, that prisoner may show cause and prejudice under the Martinez exception.

### III. ANALYSIS

#### A. Intellectual Disability Claim

Petitioner's claim that he is intellectually disabled and that Hall would prohibit his execution is a successive claim, and this court does not have the jurisdiction to consider it.

In his habeas petition, Petitioner argued in Ground II that the state court's denial of his intellectual disability claim was contrary to or an unreasonable application of Atkins. (Doc. 8 at 17.)[4] This court denied that claim on the merits. (Doc. 39 at 19-20; Doc. 50 at 3.) Petitioner does not claim that this court made an error that undermines "the integrity of the federal habeas proceedings." Gonzalez, 545 U.S. at 532 (footnote omitted). Nor has Petitioner made a convincing argument that this attack on the validity of his sentence somehow gives the court jurisdiction to consider the claim without permission from the Fourth Circuit. Id. at 538. Gonzalez makes clear that a change in law is not "a reason justifying relief" under Rule 60(b):

> Virtually every Court of Appeals to consider the question has held that such a pleading, although labeled a Rule 60(b) motion, is in substance a successive habeas petition and should be treated accordingly.
>
> We think those holdings are correct. A habeas petitioner's filing that seeks vindication of such a claim is, if not in substance a "habeas corpus application," at least similar enough that failing to subject it to the same requirements would be "inconsistent with" the statute.

---

[4] All citations in this Memorandum Opinion and Order to documents filed with the court refer to the page numbers located at the bottom right-hand corner of the documents as they appear on CM/ECF.

Id. at 531 (citations omitted).

Even were the court willing to use its equitable powers to set aside Petitioner's sentence, Petitioner has not shown that extraordinary circumstances exist to justify that decision. The Supreme Court did not overrule the settled precedent of Atkins when it decided Hall; it simply provided further guidance for state courts to follow when making determinations of intellectual disability. Furthermore, Hall would not even apply to Petitioner's case.[5] Although North Carolina's intellectual disability statute is nearly identical to Florida's, the MAR court in Petitioner's case considered extensive evidence of Petitioner's claimed intellectual disability.[6] (See Doc. 39 at 17-20; Doc. 75-1.) The state court was willing to conclude that Petitioner was not intellectually disabled based upon his IQ scores ranging from 69 to the high 80s, but continued to make findings regarding Petitioner's adaptive functioning in each of the ten areas North Carolina uses as a measure of intellectual

---

[5] Because the court denies this claim as a successive petition, it will not decide whether Hall retroactively applies to collateral attacks on a prisoner's sentence.

[6] North Carolina requires a defendant to prove by a preponderance of the evidence (1) significantly subaverage general intellectual functioning (defined as an IQ of 70 or below), (2) significant limitations in adaptive functioning in two of the ten defined adaptive-functioning areas, and (3) onset before age 18. N.C. Gen. Stat. § 15A-2005(b).

and social deficits, finding a significant limitation in only one. (Doc. 75-1 at 17-20.) In stark contrast to the strict score-based rule found to be unconstitutional in Hall, this North Carolina court allowed Petitioner a full attempt to prove his case, using the medically accepted standards of the time. Hall does not help the Petitioner.

Because Petitioner presented this claim in his original habeas corpus petition, it is denied as a second or successive application for relief. See 28 U.S.C. § 2244(b)(3)(A); Winestock, 340 F.3d at 205 ("In the absence of pre-filing authorization, the district court lacks jurisdiction to consider an application containing abusive or repetitive claims.").

**B.     Ineffective Assistance of Counsel Claims**

Similarly, Petitioner's second claim fails because it is a second or successive application for relief for which he did not seek or receive permission from the Fourth Circuit to present to this court. Petitioner originally submitted IAC claims in his habeas petitioner under Grounds III, IV, V, VI, VII, and XVI. (Doc. 8 at 19-55, 73-77.) Petitioner then conceded to the dismissal of Grounds III, IV, V, VII, and XVI because he had not exhausted them in state court, and this court rejected Ground VI on the merits. (See Doc. 78 at 13.) Martinez cannot help Petitioner because its narrow ruling only addresses cause and

prejudice to excuse ineffective assistance of trial counsel claims that were procedurally defaulted through the unconstitutionally deficient performance of post-conviction counsel. Petitioner has presented no procedurally defaulted IAC claims. He therefore has presented no extraordinary circumstances justifying relief under Rule 60(b), even if the court were to consider this claim not second or successive.

As second or successive applications for habeas relief, Petitioner's IAC claims do not come within the jurisdiction of the district court. They are thus denied.

## IV. CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that Petitioner's Motion for Relief from Judgment, (Doc. 75), is **DENIED.**

This the 29th day of May, 2019.

					_____
					United States District Judge